UNITED STATES DISTRICT COURT

EASTERN DISTRICT COURT OF LOUISIANA

DOUGLAS CLAYTON     *

            *            CASE NO. 2:11-cv-02276-HGB-KWR

          Plaintiff     *

            *            SECTION C

versus                *

            *            JUDGE BERRIGAN

JOHN W. STONE OIL     *

DISTRIBUTOR, LLC      *            MAGISTRATE 4

            *

          Defendant   *           MAGISTRATE ROBY

            *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>PRE-TRIAL ORDER</u>

### 1.

### <u>Date of Pre-Trial Conference</u>

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, a Pre-Trial conference will be conducted in this proceeding by U.S. District Court Judge Helen G. Berrigan on Tuesday, September 18, 2012 at 9:00 a.m.

### 2.

### <u>Counsel and the Parties They Represent</u>

Mark S. Stein, Marynell L. Piglia and Melanie C. Lockett on behalf of the Plaintiff, Douglas Clayton.

Ernest R. Malone, Jr. and Heather F. Crow on behalf of Defendant, John W. Stone Oil Distributor, LLC.

**3.**

**Description of the Parties**

Plaintiff, Douglas Clayton, is a person of the full age of majority and formerly employed by John W. Stone Oil Distributor, LLC.

Defendant, John W. Stone Oil Distributor, LLC, is a marine fuel distributor serving vessels in waters primarily in the Baton Rouge and New Orleans area, as well as Venice, Paulina, Port Fourchon and Cameron, Louisiana.

**4.**

**Jurisdiction**

This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as this action arises under the laws of the United States, more particularly 42 U.S.C. §2000e, *et seq.*, Title VII of the Civil Rights Act of 1964, as amended. This Honorable Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

**5.**

**Motions That Are Pending or Contemplated**

Defendant has a pending Motion for Summary Judgment and Motion in Limine to Preclude Expert Testimony and Report.  Plaintiff has opposed both Motions.  Plaintiff has a pending Motion to Strike the Declaration of Thomas J. Willis, Jr.  Defendant has opposed Plaintiff's Motion.

The parties hereby specifically reserve the right to file any appropriate Motion in Limine concerning anticipated legal and/or evidentiary matters relating to the trial of this proceeding or relating to any other matter involving the utilization of witnesses and/or exhibits at the trial of this matter.

**6.**

**Summary of Facts**

**By the Plaintiff**

Defendant is a marine fuel distributor serving vessels on the Mississippi River in the New Orleans area and elsewhere.  Plaintiff is an African American male who was employed by Defendant as a deckhand commencing on or about May 6, 2010.  Beginning on his very first day of work, on the M/V Stephanie Stone, and continuing throughout the course of his employment, Plaintiff was regularly subjected to race-based comments by various employees of Defendant, including being referred to as a "nigger,"  and being subjected to other improper racial comments and harassment. Shortly after he first stepped foot on the M/V Stephanie Stone, a tankerman, Ryan Williams, said to the rest of the crew, in front of Plaintiff, that they "have a new nigger on the boat." Plaintiff first reported this and other improper race-based conduct to Defendant's human resources manager,

Marissa Andrews, on or about August 18, 2010, and, as a result, was transferred to another boat, the M/V Jennifer, effective September 1, 2010.

The race-based harassment continued and, on or about September 9, 2010, Plaintiff again reported this ongoing harassment to Ms. Andrews. Specifically, on that date, Plaintiff advised Ms. Andrews of an incident which he found offensive, in which the Captain of the M/V Jennifer and another employee were watching television in the galley of the boat, and were making comments about "rednecks" and "coloreds" in connection with a television show they were watching. During that incident, Plaintiff was told that he would not be welcome in certain parts of the State because of his race. Ms. Andrews did not find such comments inappropriate. Therefore, rather than investigate Plaintiff's complaint, Ms. Andrews admittedly told Plaintiff to "lighten up." The fact that Plaintiff had made multiple complaints about such conduct, in Ms. Andrews's opinion, rendered Plaintiff the problem. Although Plaintiff denies that he was offered a transfer, according to Ms. Andrews, Plaintiff was offered and accepted one last transfer to another boat. According to Ms. Andrews, there would be no others.

Only several hours after Plaintiff complained to Ms. Andrews about ongoing race-based harassment, he learned that Mr. Williams, one of the individuals who had been harassing him on the first boat, had been transferred to the boat to which Plaintiff was now assigned. Plaintiff was puzzled by this new addition to the crew, as the boat was already fully staffed. The addition of Mr. Williams brought the number of crew members to seven, when the customary staffing was six. Mr.

Williams himself described the presence of seven crew members as "unusual," and could only recall it happening one time.

 After his shift that day ended, Plaintiff called 911 from his cell phone, hoping to obtain the phone number for the United States Coast Guard, which has authority over activities on the Mississippi River. After doing so, Plaintiff realized that his cell phone battery was low, and that his charger had been left in the galley. He went down to retrieve it, and found Mr. Williams and two other tankermen, Chad Ferris and Jeffery Morales, watching the Saints game there. He asked for and was given his cell phone charger. While Plaintiff was in the galley, one of the other employees yelled "run, nigger, run," at which point, Plaintiff advised them that they needed to stop using the word "nigger" or he was going to call the Coast Guard. As Plaintiff turned to leave, he was physically assaulted and battered by the three tankermen. When he was able to get up and get away from the men, Plaintiff jumped off of the moving boat onto a barge moored in the river. He called 911 and the St. Charles Parish Sheriff's Office was dispatched to the scene. Plaintiff made his way to the barge closest to shore, although even that barge was thirty to forty feet from the bank. Eventually, Plaintiff jumped off that barge and into the Mississippi River, and swam to shore.

 Later that night, Plaintiff was taken by the Sheriff's Office representatives to a local gas station, where he called a taxi, which took him to retrieve his vehicle at Defendant's site in Gretna. He then drove home to Hammond, Louisiana, arriving there in the early hours of the following morning (Friday). Plaintiff went to sleep shortly after arriving at home, and slept the remainder of

that day.  By the time he awoke, it was after 5:00 p.m., and Defendant's office was already closed.

The following day (Saturday), Plaintiff contacted Defendant's dispatch, and was advised to call the

office on Monday, which he did.   During that conversation, Plaintiff was informed that his

employment had been terminated.

Defendant has not published or disseminated a policy prohibiting harassment or

discrimination, it failed to properly train and educate its employees on those issues, and it performed

no meaningful investigation into Plaintiff's complaints or the circumstances which led Plaintiff to

jump off of a moving boat and, ultimately, into the Mississippi River.  Through this litigation,

Plaintiff has learned that his reason for leaving the boat are essentially irrelevant to the Defendant,

as the course of action which Defendant required Plaintiff to take instead of fleeing the danger was

to report the attack on him to the boat's Captain, even though the Captain is the step-father of Mr.

Leblanc, one of his attackers.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity

Commission on September 27, 2010.  He was issued a Notice of Right to Sue on September 2, 2011.

His Complaint was filed in this Court on September 9, 2011.

**By the Defendant**

Stone Oil is a marine fuel distributor serving vessels in the Baton Rouge and New Orleans

area, as well as Venice, Paulina, Port Fourchon, and Cameron, Louisiana.  Plaintiff Douglas Clayton

("Plaintiff" or "Clayton") is an African-American.   Clayton was employed by Stone Oil as a deckhand aboard Stone Oil's vessels.

Clayton was hired by Thomas J. Willis, Jr., Executive Vice-President of Stone Oil, on or around May 2010 as a deckhand.   Upon hire, Clayton received new hire orientation, and received Stone Oil's Deckhand Manual.   During his employment, Clayton worked aboard two Stone Oil fueling vessels:   the M/V STEPHANIE STONE ("*Stephanie Stone*") and the M/V JENNIFER ("*Jennifer*").   Clayton worked 14-day days straight (a "hitch"), followed by seven days off. During his hitch, Clayton lived, slept, and ate aboard the vessel.

The crew aboard the *Stephanie Stone* and *Jennifer* generally consisted of six people: two captains and a deck crew of four generally made of up deckhands and tankermen.   During each shift, or "watch," the crew on duty ("on watch") consisted of a captain, a tankerman, and a deckhand.   The crews alternated eight-hour shifts.

On or around August 18, 2010, while working on the *Stephanie Stone*, Clayton and David LeBlanc, a non-managerial, non-agent co-worker had a verbal altercation over Clayton's work effort. No racial epithets were used and the altercation had nothing to do with race.   Clayton reported the work altercation to Human Resource Manager Marissa Andrews and Clayton claimed LeBlanc had used a racial epithet, which LeBlanc denies.   Clayton requested a transfer and was transferred to the *Jennifer* effective September 1, 2010.   Clayton, who requested the transfer, was in complete agreement with the transfer and did not complain or express any disagreement or reluctance over the

transfer.  In fact, he thanked Ms. Andrews.  Further, the transfer did not change Plaintiff's hours, pay, benefits or any other conditions of his employment.

Clayton began work on the *Jennifer* on September 1.  On September 9, Clayton complained to Andrews that he overhead one conversation where employees were talking, while watching TV off watch, about "rednecks" and "black people," and that it upset him.  Clayton did not provide any specifics or provide any names, but once again, asked to be transferred.  Andrews obliged and told Clayton she would look into finding him a new boat, but he would have to complete this hitch, which Clayton said he could handle.

Later that day, Stone Oil received a report that Clayton had (1) abandoned the *Jennifer* and (2) reported to the police that non-managerial, non-agent co-workers Ryan William, Chad Ferris, and Jeffrey Morales had physically assaulted him.  A thorough investigation into Clayton's allegations of assault was done that night by officers from the St. Charles Parish Sheriff's Office, and they determined that his allegations of a fight were unfounded and not supported by the facts.  Mr. Willis secured statements from the Stone employees and they too confirmed there had not been a fight. Leaving an assigned vessel without proper authorization is considered job abandonment by Stone Oil, and constitutes a terminable offense.  Clayton did not obtain authorization or notify either of the two captains on board before he left the vessel.  Stone Oil has terminated white employees for job abandonment after walking off of the boat.  As such, Clayton was terminated for job abandonment for leaving the vessel on September 9, 2010, during his hitch, without authorization.   The

Page -8-

termination decision was made by Thomas J. Willis Jr., Executive Vice-President of Stone Oil.  At the time the termination decision was made, Mr. Willis was unaware Clayton had complained about anything related to race.

In his deposition on June 8, 2011, Clayton testified he had recently used marijuana.

## 7.

### Uncontested Material Facts

1.      Stone Oil is a marine fuel distributor serving vessels in the Baton Rouge and New Orleans area, as well Venice, Paulina, Port Fourchon, and Cameron, Louisiana.

2.      Plaintiff Douglas Clayton ("Plaintiff" or "Clayton") is an African-American.

3.      Clayton was employed by Stone Oil as a deckhand aboard Stone Oil's vessels beginning May 6, 2010.

4.      Clayton began work aboard the M/V Stephanie Stone ("*Stephanie Stone*") on May 6, 2010.

5.      Clayton later worked aboard the M/V Jennifer ("*Jennifer*"), starting on September 1, 2010.

6.      Clayton worked a 14-day hitch, followed by seven days off.

7.      During his hitch, Clayton lived, slept, and ate aboard the vessel.

8.      Plaintiff was employed by Defendant commencing May 6, 2010.

9.      Plaintiff's employment with Defendant was terminated effective September 9, 2010.

10.     At all times, Plaintiff was employed by Defendant as a deckhand.

11.     Plaintiff was assigned originally to the M/V Stephanie Stone.

12.     Plaintiff was transferred to the M/V Jennifer effective September 1, 2010.

13.     On September 9, 2010, Ms. Andrews told Plaintiff to "lighten up."

14.     Thereafter, on the evening of September 9, 2010, Plaintiff jumped off of the M/V Jennifer onto a barge that was moored in the Mississippi River.

15.     After jumping onto the barge, Plaintiff called 911.

16.     Representatives of the St. Charles Parish Sheriff's Office were dispatched and interviewed Plaintiff and other of Defendant's employees.

17.     Plaintiff contacted Defendant's dispatch on September 11, 2010.

18.     Plaintiff's employment with Defendant was terminated effective September 9, 2010.

19.     Plaintiff filed a Charge of Discrimination with the EEOC on September 27, 2010.

20.     The EEOC issued Plaintiff a Notice of Right to Sue on September 2, 2011.

21.     Plaintiff filed his Complaint in this Court on September 9, 2011.

**8.**

**A Single Listing of the Contested Material Facts**

1.     Whether race was a motivating factor in Mr. Willis' decision to terminate Plaintiff for abandoning ship on September 9, 2010 and not completing his hitch;

2.      Even if Plaintiff could establish that either race or retaliation was a motivating factor with respect to this employment decision, whether Mr. Willis would have taken the same employment action in the absence of any alleged impermissible motivating factor;

3.      Whether Stone Oil had a legitimate, non-discriminatory reason for terminating Plaintiff effective September 9, 2010;

4.      Whether Plaintiff properly raised the issue of a racially hostile work environment or retaliatory discharge in his EEOC Charge;

5.      Whether Plaintiff properly raised the issue of a racially hostile work environment or retaliatory discharge in his Complaint;

6.      Whether Plaintiff was subjected to unwelcome conduct on the basis of his race;

7.      Whether the conduct about which Plaintiff complains was directed at him and based on his race;

8.      Whether Plaintiff had a good faith reasonable belief that the he was subjected to a racially hostile work environment;

9.      Whether the conduct about which Plaintiff complains was sufficiently severe or pervasive to constitute a hostile work environment on the basis of race;

10.     Whether the conduct about which Plaintiff complains prior to his jumping ship altered a term, condition or privilege of Plaintiff's employment;

11.    Whether the conduct about which Plaintiff complains prior to his termination culminated in a tangible employment action taken by Stone Oil management;

12.    Whether Plaintiff's version of the events, including those of September 9, are true and whether any of the purported events were racially motivated;

13.    Whether Plaintiff engaged in protected activity within the meaning of Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e, et seq. and La. R.S. 51:2256;

14.    Whether La. R.S. 51:2256 provides a cause of action for retaliation in employment;

15.    Whether Plaintiff complained of race discrimination or racial harassment to any member of Human Resources prior to his termination;

16.    Whether Plaintiff made a protected complaint of racial animosity in his work environment to Marissa Andrews on September 9;

17.    Whether Mr. Tommy Willis knew that Plaintiff had engaged in any form of protected activity on September 9 prior to the decision to terminate Plaintiff for abandoning ship;

18.    Whether Stone Oil engaged in conduct that was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency;

19.    Whether Plaintiff suffered severe emotional distress as a result of Stone Oil's actions;

20.    Whether Plaintiff engaged in protected activity within the meaning of La. R.S. 51:2256;

21.    Whether Plaintiff suffered emotional distress damages and, if so, to what extent;

22.     Whether Stone Oil's actions were the sole and proximate cause of any emotional distress allegedly suffered by Plaintiff;

23.     Whether Plaintiff suffered any loss of wages;

24.     Whether Stone Oil's actions were the sole and proximate cause of any lost wages allegedly suffered by Plaintiff;

25.     Whether Stone Oil had an equal opportunity and anti-discrimination policy in place during Plaintiff's employment;

26.     Whether Stone Oil provided appropriate protective and corrective opportunities to prevent and promptly correct any complaints of racial harassment by transferring Plaintiff to another vessel;

27.     Whether Plaintiff unreasonably failed to take advantage of any protective or corrective opportunities that could have been provided by Stone Oil by failing to contact one of the two Captains on board the *Jennifer* on September 9, the dispatcher, or a member of the management team to avoid harm rather than improperly abandoning ship;

28.     Whether, and in what amount, if any, Plaintiff is entitled to an award of lost wages (back pay or front pay);

29.     Whether Plaintiff made reasonable efforts to properly mitigate any alleged back pay damages;

30.     Whether Plaintiff is ineligible for reinstatement or back pay due to his admitted illegal conduct of smoking marijuana, which makes him ineligible to work on a Stone Oil vessel or a Coast Guard regulated vessel;

31.     Whether, and in what amount, Plaintiff is entitled to an award of compensatory damages;

32.     To the extent Plaintiff is awarded back pay, whether Stone Oil is entitled to a credit in an amount equal to the wages earned by Plaintiff subsequent to his employment with Stone Oil;

33.     Whether Stone Oil's conduct was malicious, recklessly indifferent, willful or wanton or otherwise showed a deliberate disregard for Plaintiff's rights;

34.     Upon hire, Clayton received new hire orientation and received Stone Oil's Deckhand Manual;

35.     The decision to hire Clayton was made by Thomas J. Willis Jr., Executive Vice-President of Stone Oil;

36.     The Steersman Program is a program to obtain certain United States Coast Guard licensing.  The Steersman Program requires training under a Designated Examiner;

37.     On or around September 9, 2010, the *Jennifer* had a Designated Examiner, Michael Champlin;

38.     During each shift, or "watch," the crew on duty ("on watch") consisted of a captain, a tankerman, and a deckhand.  The crews on the *Jennifer* alternated eight-hour shifts;

39.     On or around August 18, 2010, Clayton and a tankerman named David LeBlanc ("LeBlanc") had a verbal altercation on a barge in Alabama;

40.     The verbal altercation was reported to Human Resource Manager Marisa Andrews ("Andrews");

41.     After receiving the complaint, Clayton requested a transfer and was transferred from the *Stephanie Stone* to the M/V Jennifer ("*Jennifer*");

42.     At the time of his transfer, Plaintiff did not tell Andrews that he thought the transfer was unfair, but rather told her that it was fine and thanked her;

43.     On September 9, 2010, Clayton made a complaint to Human Resource Manager Marisa Andrews and asked for another transfer, which was granted;

44.     At no point did Clayton ever specifically complain to Human Resource Manager Marisa Andrews about Stone Oil employee Ryan Williams;

45.     Ryan William, Chad Ferris, and Jeffrey Morales were non-managerial seaman co-workers of Clayton and not agents of the employer;

46.     On September 9, 2010, Clayton left the *Jennifer* without authorization and without completing his hitch;

47.     Clayton did not obtain authorization or notify either of the captains on board, or call dispatch or anyone else at the Company before he abandoned the vessel;

48.     Leaving an assigned vessel without authorization is considered job abandonment by Stone Oil, and constitutes a terminable offense;

49.     Stone Oil has terminated white employees for job abandonment after walking off of the boat;

50.     Clayton was terminated for job abandonment for leaving the vessel on September 9, 2010, during his hitch, without authorization;

51.     The termination decision was made by Thomas J. Willis Jr., Executive Vice-President of Stone Oil;

52.     In his deposition on June 8, 2011, Clayton testified he had recently used marijuana;

53.     On or about August 18, 2010, Plaintiff complained to Marissa Andrews, Defendant's human resources manager, about race-based comments being made on the M/V Stephanie Stone;

54.     On September 9, 2010, Plaintiff complained to Ms. Andrews about race-based comments being made on the M/V Jennifer;

55.     On September 9, 2010, after his shift ended, Mr. Clayton went to the galley of the M/V Jennifer to collect his cell phone charger;

56.     The specifics of Plaintiff's complaints to Ms. Andrews;

57.     The events of the evening of September 9, 2010;

58.     Whether Plaintiff was subjected to race-based harassment, hostile work environment and discrimination, and retaliation;

59.     The amount of damages to which Plaintiff is entitled.

**9.**

## A Single Listing of the Contested Issues of Law

1.      Whether Plaintiff has properly pled a hostile work environment claim;

2.      If Plaintiff has satisfactorily pled a hostile work environment claim, whether Plaintiff met his burden of proof in his attempt to prove a hostile work environment;

3.      Whether Plaintiff met his burden of proof in his attempt to prove retaliation;

4.      Whether Plaintiff engaged in an activity protected under Title VII;

5.      If Plaintiff did engage in an activity protected under Title VII, whether he lost that protection through his behavior;

6.      Whether Defendant is entitled to the "same actor" inference regarding Plaintiff's termination claim;

7.      Whether Defendant exercised reasonable care to prevent and correct promptly any discriminatory or harassing behavior and whether the Plaintiff failed to take advantage of any preventive or corrective opportunities provided by the Defendant or to avoid harm otherwise;

8.      Whether Plaintiff has pled sufficient facts that would entitle him to punitive damages;

9.      Whether Stone Oil had a legitimate reason for exercising the rights it possessed against Plaintiff;

10. Whether Stone Oil exercised any right it possessed for the purpose of intentionally harming Plaintiff;

11. Whether Plaintiff can establish a prima facie case of disparate treatment pursuant to Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e, et seq., or La. R.S. 51:2256;

12. Whether Plaintiff can carry his ultimate burden of proving intentional discrimination based on race with respect to his claims;

13. Whether Plaintiff can establish a prima facie case of retaliation based on a protected activity;

14. Whether Stone Oil has carried its burden of producing a legitimate, non-discriminatory reason for terminating Plaintiff;

15. Whether Plaintiff has shown that Stone Oil's legitimate, non-discriminatory reason was a mere pretext for intentional race discrimination or retaliation;

16. Whether Plaintiff has carried his ultimate burden of proving intentional discrimination or retaliation with respect to the decision to terminate him;

17. Whether some of Plaintiff's  claims are outside the scope of his EEOC Charge and therefore, subject to dismissal for failure to properly exhaust administrative remedies;

18. Whether Plaintiff has proven the essential elements of a claim of racial harassment within the meaning of Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e, et seq., or La. R.S. 51:2256;

19.     Whether Plaintiff was subjected to conduct which would constitute a hostile work environment based on race;

20.     Whether the conduct about which Plaintiff complains was sufficiently severe or pervasive to constitute a hostile work environment based on his race;

21.     Whether Stone Oil provided appropriate protective and corrective opportunities to prevent and promptly correct plaintiff's complaints, if any, of race  harassment by transferring Plaintiff on September 1 from the Stephanie Stone to the Jennifer and offering to transfer him on September 9 to yet another vessel;

22.     Whether Plaintiff has proven a prima face case of retaliation within the meaning of Title VII of the Civil Rights Act, as amended, or La. R.S. 51:2256;

23.     Whether Plaintiff engaged in protected activity for purposes of his retaliation claim within the meaning of Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e, et seq. or La. R.S. 51:2256;

24.     Whether La. R.S. 51:2256 provides a cause of action for retaliation in employment;

25.     Whether Plaintiff has satisfied his ultimate burden of persuasion that he was subjected to unlawful retaliation;

26.     Whether Plaintiff has proven the essential elements of his claim of intentional infliction of emotional distress;

27.     Whether Plaintiff has carried his burden of proof with respect to his claim for monetary damages;

28.     Whether Plaintiff has carried his burden of proof with respect to his claim for compensatory damages;

29.     Whether, and in what amount, Plaintiff is entitled to an award of lost wages (back pay);

30.     Whether, an in what amount, Plaintiff is entitled to an award of lost wages (front pay);

31.     Whether, and in what amount, Plaintiff is entitled to an award of compensatory damages;

32.     Whether Plaintiff's admitted current marijuana use bars reinstatement and any claims for economic damages;

33.     Whether Stone Oil's actions were the sole and proximate cause of any damages, whether compensatory or economic, allegedly suffered by Plaintiff;

34.     To the extent Plaintiff is awarded back pay, whether Stone Oil is entitled to a credit in an amount equal to the wages earned by Plaintiff subsequent to his employment with Stone Oil;

35.     Whether and to what extent Plaintiff is entitled to an award of attorney fees;

36.     If Plaintiff has pled sufficient facts that would entitle him to punitive damages, whether Plaintiff is entitled to punitive damages and whether Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights;

37.     Whether Plaintiff can satisfy his ultimate burden of persuasion that he was subject to retaliation and discrimination regarding his termination.

38.     Whether Plaintiff was subjected to race-based harassment, hostile work environment and discrimination, and retaliation.

## 10.

## Exhibits

**A.    Plaintiff's Exhibits**

1.      Plaintiff's Charge of Discrimination filed with the EEOC.

2.      EEOC's Notice of Right to Sue issued to Plaintiff.

3.      Documents reflecting Plaintiff's job search after the termination of his employment with Defendant.

4.      Plaintiff's Sprint phone records.

5.      Plaintiff's tax returns, W-2s and other evidence of income.

6.      Captain's Log for the M/V Jennifer for September 9, 2010 (D-0143-44).

7.      Handwritten "statements" dated September 9, 2010 (D-0129-35).

8.      Typed document dated November 10, 2010 (D-0129).

9.      Employee Disciplinary Reports re: Ryan Williams (D-0265-67).

10.     Employee Disciplinary Report re: David LeBlanc (D-0268).

11.     The Deckhand's Manual (D-0161-264).

12.     Safety Policy Manual (D-0148-60).

13.     Any other document produced in connection with anticipated discovery responses by

Defendant.

14.     Any document listed without objection or used by Defendant.

15.     Any deposition transcript or other document needed for impeachment or rebuttal

purposes.

**B.     Defendant's Exhibits**:

Defendant submits the following list of exhibits which may or will be used at trial:

1.      September 9, 2010 Police Report;

2.      Louisiana Workforce Commission Appeal, Administrative Law Judge decision on

December 9, 2010;

3.      Plaintiff's termination documentation from Stone Oil;

4.      Stone Oil's EEO policy and posting;

5.      Excerpts From Plaintiff's Personnel File;

6.      Work and hitch schedule for the Plaintiff;

7.      Stone Oil's Deckhand Manual;

8.      Pictures of the vessels involved in the incident of September 9, 2010;

9.      Termination papers for white Stone Oil employees discharged for abandoning ship;

10.     Excerpts from Plaintiff's depositions, including any deposition exhibits;

11.    Any pleadings by any party;

12.    Any documents produced and not objected to by any party;

13.    Any documents necessary for impeachment or rebuttal purposes;

14.    Any exhibit listed by Plaintiff not objected to.

**C.    Plaintiff's exhibits to which there is objection**.

1.    Defendant's object to the unidentified exhibits listed in paragraph 5 of Plaintiff's Exhibits to the extent they were not produced in discovery and contain information that precedes Plaintiff's termination in September 2010.

2.    Defendant's object to the Employee Disciplinary Reports re Ryan Williams and David LeBlanc listed in paragraph 9 and 10 of Plaintiff's Exhibits on the grounds of relevancy, materiality, confusion of the issues, misleading the jury, unfair prejudice, undue delay, waste of time, and hearsay. Fed.R.Evid. 401, 402, 403, 801 and 802.

**D.    Defendant's exhibits to which there is objection**.

1.    Plaintiff objects to the September 9, 2010 Police Report listed in paragraph 1 of Defendant's Exhibits on the grounds of hearsay, confusion of the issues, misleading the jury, and unfair prejudice.

2.    Plaintiff objects to the Louisiana Workforce Commission Appeal, Administrative Law Judge decision on December 9, 2010 listed in paragraph 2 of Defendant's Exhibits on the grounds of hearsay, confusion of the issues, misleading the jury, and unfair prejudice.

3.      Plaintiff objects to Stone Oil's EEO policy and posting listed in paragraph 4 of Defendant's Exhibits to the extent that this exhibit includes documents which were requested in discovery but not produced by Defendant in response to discovery requests and was not produced until this week, and long after discovery had been completed and the discovery deadline past. Moreover, to the extent this exhibit includes any EEO policy which was never disseminated in any fashion to Defendant's employees, Plaintiff objects on the grounds of relevance, confusion of the issues, misleading the jury, and unfair prejudice.

4.      Plaintiff objects to Excerpts from Plaintiff's Personnel File listed in paragraph 5 of Defendant's Exhibits as insufficiently specific, vague and ambiguous, and on the grounds of hearsay, confusion of the issues, misleading the jury, and unfair prejudice.

5.      Plaintiff objects to the work and hitch schedule for the Plaintiff listed in paragraph 6 of Defendant's Exhibits because this document was not previously identified as an exhibit on Defendant's Exhibit List filed with the Court and provided to Plaintiff's counsel.

6.      Plaintiff objects to pictures of the vessels involved in the incident of September 9, 2010 listed in paragraph 8 of Defendant's Exhibits because these documents were not previously identified as an exhibit on Defendant's Exhibit List filed with the Court and provided to Plaintiff's counsel.

7.      Plaintiff objects to termination papers for white Stone Oil employees discharged for abandoning ship listed in paragraph 9 of Defendant's Exhibits because these documents were not

previously identified as an exhibit on Defendant's Exhibit List filed with the Court and provided to Plaintiff's counsel.

8.      Plaintiff objects to the items listed in paragraphs 10 and  12 of Defendant's Exhibits as insufficiently specific, vague and ambiguous.

## 11.

### Deposition Testimony to be Offered Into Evidence

The parties may use depositions for any purpose authorized by the Federal Rules of Civil Procedure, including to refresh the recollection of a witness and/or for purpose of impeachment.  The parties reserve the right to use the deposition of any witness who is or becomes unavailable for trial.

## 12.

### Demonstrative Aids

**A.      Identification**

The parties may use enlargements and/or charts depicting their exhibits, which may be introduced into evidence.  These documents may address time lines, damages, organization, chain-of-command, scoring results from the various promotions at issue, and other facts of the case.  These documents may be utilized during opening statements, closing arguments, and throughout the course of this trial.

**B.      Stipulation or Objections to Demonstrative Exhibits**

The parties reserve the right to object to the use of the above described enlargements, charts, and/or documents until they have had the opportunity to examine them.

With the exception of enlargement of exhibits, the parties will provide all counsel with a copy of the above described charts and/or document for its examination at least three (3) days prior to the trial.

## 13.

### Witnesses

**a.      Plaintiff will call**

1.      Douglas Clayton
c/o Lowe, Stein, Hoffman, Allweiss & Hauver, LLP
701 Poydras Street, Suite 3600
New Orleans, LA 70139

To testify regarding facts relating to his employment with Defendant; his interaction with employees of Defendant; the harassment, discrimination and retaliation he endured while employed with Defendant; circumstances surrounding to the termination of his employment; and the damages he suffered as a result.

2.      Harold Asher, CPA
400 Poydras Street
New Orleans, LA

To testify regarding expert opinions relating to Plaintiff's damages.

**b.      Plaintiff may call**

3.      Marissa Andrews (on cross examination)
        1601 Belle Chasse Highway, Suite 300
        Gretna, LA 70056

To testify regarding facts relating to Plaintiff's employment with Defendant; her interaction

with Plaintiff; the harassment, discrimination and retaliation he endured while employed with

Defendant and her investigation or lack thereof; circumstances surrounding the termination of

Plaintiff's employment; and the damages Plaintiff suffered as a result.

4.      Ryan Williams (on cross examination)
        812 Lakewood Drive
        Picayune, MS 39466

To testify regarding his employment with Defendant; his interaction with Plaintiff; the

harassment, discrimination and retaliation Plaintiff endured while employed with Defendant; and

the circumstances surrounding the termination of Plaintiff's employment.

5.      Michael Champlin (on cross examination)
        2409 Shadyside Lane
        Picayune, MS 39466

To testify regarding his employment with Defendant; his interaction with Plaintiff; the

harassment, discrimination and retaliation Plaintiff endured while employed with Defendant; and

the circumstances surrounding the termination of Plaintiff's employment.

6.      Jeffery Morales (on cross examination)
        1010 East Drive
        Weswego, LA 70094

To testify regarding his employment with Defendant; his interaction with Plaintiff; the harassment, discrimination and retaliation Plaintiff endured while employed with Defendant; and the circumstances surrounding the termination of Plaintiff's employment.

       7.     David LeBlanc (on cross examination)
          1068 Dogwood Trail, Lot 79
          McComb, MS 39648

To testify regarding his employment with Defendant; his interaction with Plaintiff; the harassment, discrimination and retaliation Plaintiff endured while employed with Defendant; and the circumstances surrounding the termination of Plaintiff's employment.

       8.     Ricky Laborde (on cross examination)
          9 Camellia Lane
          Waggamann, LA 70094

To testify regarding his employment with Defendant; his interaction with Plaintiff; the harassment, discrimination and retaliation Plaintiff endured while employed with Defendant; and the circumstances surrounding the termination of Plaintiff's employment.

       9.     Michael Joe McKey (on cross examination)
          29287 Lexton Lane
          Livingston, LA 70163

To testify regarding his employment with Defendant; his interaction with Plaintiff; and the harassment, discrimination and retaliation Plaintiff endured while employed with Defendant.

      10.     Thomas J. Willis, Jr. (on cross examination)
          4901 Castaing Street
          Metairie, LA 70006

To testify regarding facts relating to Plaintiff's employment with Defendant; his interaction with Ms. Andrews; the harassment, discrimination and retaliation he endured while employed with Defendant and the investigation or lack thereof; circumstances surrounding the termination of Plaintiff's employment; and the damages Plaintiff suffered as a result.

11.     Any other witness listed or called by Defendant.

12.     Any other witness needed for rebuttal purposes.

**c.     Defendant will call**

Defendant submits the following individual who will be called to testify at trial:

Thomas Willis;

c/o  through counsel

*Mr. Willis will testify regarding Stone Oil's practices, policies and procedures and Plaintiff's employment and termination.*

**d.     Defendant may call**

Defendant submits the following individuals may be called to testify at trial:

1.     Marisa Andrews;
       87 First Street
       Gretna, LA 70053

*Ms. Andrews may testify regarding Stone Oil's practices, policies and procedures and Plaintiff's employment and termination.*

2.     Ronald Newman
       St. Charles Parish Sheriff's Office, Law Enforcement Complex
       260 Judge Edward Dufresne Parkway
       Luling, LA 70070

*Mr. Newman may testify regarding his investigation of the events of September 9, 2010.*

3.     Jimmy Robert
          St. Charles Parish Sheriff's Office
          Law Enforcement Complex
          200 Judge Edward Dufresne Parkway
          Luling, LA 70070

*Mr. Robert may testify regarding his investigation of the events of September 9, 2010.*

4.     Ryan Williams
          812 Lakewood Dr.
          Picayune, MS 39466

*Mr. Williams may testify regarding Plaintiff's employment, including the events of September 9th.*

5.     Chad Ferris
          17403 Rising Fawn Road
          Amite, LA 70422-7416

*Mr. Ferris may testify regarding Plaintiff's employment, including the events of September 9th.*

6.     Jeffrey Morales
          1404 Central Ave.
          Westwego, LA 70094

*Mr. Morales may testify regarding Plaintiff's employment, including the events of September 9th.*

7.     David LeBlanc
          4778 A Upper Glading R.
          Summit, MS 39666

*Mr. LeBlanc may testify regarding Plaintiff's employment, including the events of September 9th.*

8.      Michael Champlin
        2409 Shadyside Lane
        Picayune, MS 39466

*Mr. Champlin may testify regarding Plaintiff's employment, including the events of September 9th.*

9.      Joel McKey
        29287 Lexton Lane
        Livingstone, LA 70163

*Mr. McKey may testify regarding Plaintiff's employment, including the events of September 9th.*

10.     Carl Alexie
        2720 Oak Leafe Drive
        Marrero, LA 70072

*Mr. Alexie may testify about his duties as dispatcher and the events of September 9th.*

11.     Ricky Laborde
        9 Camelia Ln.
        Waggaman, LA 70094

*Mr. Laborde may testify regarding Plaintiff's employment, including the events of September 9th.*

Any witness who is not listed above but who is referenced in any exhibit that is listed or used

by either party;

Any witness who is not listed above but who is referenced in any deposition, or document

that was or is produced by either party;

Any witness listed or called by the Plaintiff;

Any witness for impeachment or rebuttal purposes;

Any witness needed to authenticate any document or exhibit.

**e.    Witness List Statement**

The witness list of the parties was filed in accordance with prior Court Orders. Plaintiff certifies that he provided the report of his expert in accordance with prior court orders.

**14.**

**Statement Regarding Jury Case**

This case is a jury case applicable to all aspects of the case, save the issues of front pay, and mitigation of damages.

Proposed jury instructions, special jury interrogatories, trial memoranda and any special questions that the Court is asked to put to prospective jurors on voir dire shall be delivered to the Court and opposing counsel not later than five working days prior to the trial date, unless specific leave to the contrary is granted by the Court.

**15.**

**Statement Regarding Separate Trial for Liability and Quantum**

The issue of liability will <u>not</u> be tried separately from that of quantum.

**16.**

**Additional Matters**

The parties are unaware of any other matters that might expedite a disposition if the case, except for a resolution of Defendant's pending motion for summary judgment.

Plaintiff and Defendant expect to file Motions in Limine in accordance with the Court Case Management Order.

## 17.

### Trial Date

Pursuant to the Order of this Court, a jury trial shall commence in this case beginning October 9, 2012, and is estimated to last 3 days.

## 18.

### Statement Regarding Formulation of Pre-Trial Order

Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

## 19.

### Settlement

The possibility of settlement of this case was considered.

New Orleans, Louisiana, this ___ day of September, 2012.

_____
UNITED STATES DISTRICT JUDGE

Respectfully submitted,

LOWE, STEIN, HOFFMAN,                    THE KULLMAN FIRM, P.L.C.
     ALLWEISS, & HAUVER, L.L.P.


 /s/ Marynell L. Piglia                                     /s/ Heather F. Crow                    
**MARK S. STEIN (12428)**                **ERNEST R. MALONE, JR. (9066)**
**MARYNELL L. PIGLIA  (20329**)          **HEATHER F. CROW (33080)**
**MELANIE C. LOCKETT (30601)**           1100 Poydras Street, Suite 1600
701 Poydras Street, Suite 3600           New Orleans, Louisiana 70163
New Orleans, LA 70139                     (504) 524-4162
(504) 581-2450
Attorneys for Plaintiff, Douglas Clayton  Attorneys   for John W. Stone Oil
                                          Distributor,
                                          LLC

                                          FOWLER, RODRIGUEZ VALDES-FAULI
                                          400  Poydras  Street,  30th  Floor
                                          New Orleans, LA  70130
                                          Telephone:  (504) 523-2600
                                          Facsimile:  (504) 523-2705

                                          Attorneys for John W. Stone Oil
                                          Distributor, LLC